**JAKUB P. MEDRALA, ESQ.**
Nevada Bar No. 12822
**THE MEDRALA LAW FIRM, PROF. LLC**
1091 S. Cimarron Road, Suite A-1
Las Vegas, Nevada 89145
(702) 475-8884
(702) 938-8625 Facsimile
jmedrala@medralaw.com
*Attorney for Plaintiffs*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

AYDE AZUCCERA PEREZ GUTIERREZ;
BRENDA KARLA GABRELA REYES
MEDRANO; ADRIANA TORRES; ERIKA
SOCORRO VALLE PERALTA; SALVADOR
VLADIMIR JIMENEZ FLORES; and
VIRIDIANA RAMIREZ RODRIGUEZ,

             **Plaintiffs,**

             vs.

MARISCOS EL PUERTO, INC.; LA
CATRINA, LLC; LA CATRINA
ENTERTAINMENT, LLC; MANUELA
HERNANDEZ; JULIAN HERNANDEZ;
HECTOR MORENO; and DANNY
HERNANDEZ,

             **Defendants.**

CASE NO.:  2:19-cv-1940

**COLLECTIVE ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

### I.

### INTRODUCTION

1.  Plaintiffs Ayde Azuccera Perez Gutierrez ("Gutierrez"); Brenda Karla Gabrela Reyes

Medrano ("Medrano"); Adriana Torres ("Torres"); Erika Socorro Valle Peralta ("Peralta");

Salvador Vladimir Jimenez Flores ("Flores"); and Viridiana Ramirez Rodriguez ("Rodriguez")

(collectively, "Lead Plaintiffs"), individually and on behalf of all others similarly situated, allege for their Collective Action Complaint against Defendants  Mariscos El Puerto, Inc. ("Mariscos"); La Catrina, LLC ("La Catrina"); La Catrina Entertainment, LLC ("LCE"); Manuela Hernandez ("Manuela"); Julian Hernandez ("Julian"); Hector Moreno ("Hector"), and Danny Hernandez ("Danny") (collectively, "Defendants"), upon personal knowledge as to themselves and their own acts, and as to all other matters upon information and belief, based upon, *inter alia*, the investigation made by their attorneys, as follows:

2.   The Lead Plaintiffs are, or were, workers employed by the Defendants as part of their bar and restaurant business operation commonly known as La Catrina Bar & Grill and  Mariscos El Puerto, located at 1901 N. Decatur Blvd., Las Vegas, NV 89108, and 1905 N. Decatur Blvd., Las Vegas, NV 89108 ("the Restaurant"). All Lead Plaintiffs were or are employed in positions that are not exempt from the minimum wage or overtime provisions of the Fair Labor Standards Act ("FLSA") and Nevada law.

3.   The Defendants willfully failed to pay the Lead Plaintiffs and other similarly situated employees their minimum wages and overtime wages, as well as otherwise engaging in grossly unlawful and criminal activities against the Lead Plaintiffs, such as sexual harassment, battery, assaults, rapes, defamation, intentional infliction of emotional distress, retaliation, civil conspiracy, defamation, public disclosure of private facts, and many others.

4.   The Defendants' practices are in direct violation of the FLSA, 29 U.S.C. §§ 201 *et seq.*, and the Nevada wage and hour laws. By way of this lawsuit, the Lead Plaintiffs seek compensation and credit for all uncompensated work required or permitted by the Defendants,

liquidated damages, punitive damages, attorney fees and costs, and an injunctive relief against further unlawful actions.[1]

## II.

## JURISDICTION

5.   This action arises under the statutes of the United States for violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*

6.   This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this matter arises as a result of alleged violations of federal law.

7.   This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiffs' Nevada wage claim and common law claims as they form part of the same case or controversy.

8.   Pursuant to 29 U.S.C. § 216(b), this Court has jurisdiction over this matter as an action brought by the Lead Plaintiffs as individuals and as a Collective Action brought on behalf of all current and former similarly situated employees of the Defendants.

9.   Venue is proper under 28 U.S.C. § 1391 insofar as a substantial part of the events or omissions giving rise to the Lead Plaintiffs' claims occurred in the District of Nevada. Further, venue is proper because the Defendants do business in Nevada.

/ / /

/ / /

---

[1]This lawsuit does not involve the Lead Plaintiffs' claims for sexual discrimination as such claims are subject to parallel administrative proceedings.

## III.

## **PARTIES**

10. Plaintiff Gutierrez is a resident of Las Vegas, Nevada. Ms. Gutierrez was employed by the Defendants from approximately May 2015 to September 2019 when she was fired for refusing sexual advances from Defendants Danny and Hector. Ms. Gutierrez worked as a busser and waitress for the Defendants. Ms. Gutierrez worked hours in excess of forty (40) hours per week without receiving minimum wages and overtime compensation as required under both Nevada and federal law.

11. Plaintiff Medrano is a resident of Las Vegas, Nevada. Ms. Medrano was employed by the Defendants from approximately November 2017 to September 2019 when she was fired for refusing sexual advances from Defendant Hector. Ms. Medrano worked as a waitress for the Defendants. Ms. Medrano worked hours in excess of forty (40) hours per week without receiving minimum wages and overtime compensation as required under both Nevada and federal law.

12. Plaintiff Torres is a resident of Las Vegas, Nevada. Ms. Torres has been employed by the Defendants from approximately February 2016 to the present time. Ms. Torres is constantly subject to sexual harassment from the Defendants. Ms. Torres works as a waitress for the Defendants. Ms. Torres has worked, and still works, hours in excess of forty (40) hours per week without receiving minimum wages and overtime compensation as required under both Nevada and federal law.

13. Plaintiff Peralta is a resident of Las Vegas, Nevada. Ms. Peralta has been employed by the Defendants from approximately February 2015 to the present time. Ms. Peralta is constantly subject to sexual harassment from the Defendants. Ms. Peralta works as a waitress for the

Defendants. Ms. Peralta has worked, and still works, hours in excess of forty (40) hours per week without receiving minimum wages and overtime compensation as required under both Nevada and federal law.

14. Plaintiff Flores is a resident of Las Vegas, Nevada. Mr. Flores has been employed by the Defendants from approximately March 2016 to the present time. Mr. Flores works as a busser for the Defendants and is constantly subject to sexual harassment from the Defendants based on his sexual orientation. Mr. Flores has worked, and still works, hours in excess of forty (40) hours per week without receiving minimum wages and overtime compensation as required under both Nevada and federal law.

15. Plaintiff Rodriguez is a resident of Las Vegas, Nevada. Ms. Rodriguez was employed by the Defendants from approximately March 2016 to the present time. Ms. Rodriguez works as a cook for the Defendants and is constantly subject to sexual harassment and physical violence from the Defendants because of her sexual orientation.

16. Defendant Mariscos is a Nevada corporation wholly owned and controlled by Defendants Manuela, Julian, Hector, and Danny, and all are engaged in the operation of the Restaurant.

17. Defendant La Catrina is a Nevada limited liability company directly controlled by Defendants Manuela, Julian, Hector, and Danny, and all are engaged in the operation of the Restaurant.

18. Defendant LCE is a Nevada limited liability company directly controlled by Defendants Manuela, Julian, Hector, and Danny, and all are engaged in the operation of the Restaurant.

19. Defendant Manuela is a resident of Nevada and an officer and the president of Mariscos and La Catrina. Upon information and belief, she holds a significant ownership interest with significant operational control of LCE.

5

20. Defendant Julian is a resident of Nevada and a manager of Mariscos, La Catrina, and LCE. Upon information and belief, he holds a significant ownership interest with significant operational control of Mariscos, La Catrina, and LCE.

21. Defendant Hector is a resident of Nevada and a managing member of LCE and a manager of Mariscos and La Catrina. Upon information and belief, he holds a significant ownership interest with significant operational control of Mariscos, La Catrina, and LCE.

22. Defendant Danny is a resident of Nevada and a manager of Mariscos, La Catrina, and LCE. Upon information and belief, he holds a significant ownership interest with significant operational control of Mariscos, La Catrina, and LCE.

23. At all relevant times, the Defendants employed the Lead Plaintiffs jointly, as this term is used under the FLSA and Nevada law, and each of them exercised control over the nature and structure of their employment. Specifically, without limitation, each of the Defendants had the power to hire and fire each of the Lead Plaintiffs and to determine the condition of their employment, such as the amount of their wages, job duties, work schedules, discipline, and other job-related matters.

24. The Defendants individually, through their substantial and significant involvement and contacts with the Lead Plaintiffs and other employees, are covered employers as defined by the FLSA and the Code of Federal Regulations, and therefore are subject to the provisions of the FLSA.

25. The Defendants collectively, through their substantial and significant involvement and contacts with the Lead Plaintiffs and other employees, are covered employers as defined by the FLSA and the Code of Federal Regulations, and therefore are subject to the provisions of the FLSA and other relevant laws.

## IV.

## GENERAL ALLEGATIONS

26. The Defendants are engaged in the business operation of the Restaurant.

27. In the course of their business, the Defendants hired the Lead Plaintiffs to perform various functions at the Restaurant, such as bussers, cooks, and/or waitresses.

28. The majority of the Defendants' employees, including the Lead Plaintiffs, were and are commonly referred to and classified by Defendants as "day-rate" employees who are designated to receive day-rate compensation for any and all days suffered or permitted to work by the Defendants. Their compensation depends upon the number of days worked in a given workweek, but usually amounts to $50 a day.

29. The majority of the Defendants' employees work anywhere between 8-14 hours a day, 5-7 days a week.

30. Under the FLSA, covered employees are required to receive a minimum wage of $7.25 per hour.

31. Under Nevada law, covered employees are required to receive a minimum wage of $8.25 per hour.

32. Under the FLSA, covered employees are required to receive an overtime hourly wage at a rate of 1½ times their normal hourly rate for hours worked in excess of 40 hours during each and every workweek, unless they qualify for a specific exemption contained in the FLSA.

33. Under the FLSA and Nevada law, employers are required to keep timekeeping records that accurately reflect all hours worked by each employee and the compensation they received.

34. The FLSA also prohibits discrimination or retaliation against any covered employee (including former employees) for attempting to assert his or her rights under the statute.

35. The day-rate employees of the Defendants do not rightfully qualify for any of the exemptions found in the FLSA or Nevada law, and therefore must be legally paid an hourly rate of at least $8.25 per hour and overtime hourly wage for all hours worked in excess of 40 hours during each and every workweek.

36. The Defendants consciously implemented a system of coercion, deception, and violence aimed at denying employees their rights to minimum wage and overtime pay while forcing them to work an excessive number of hours without pay.

37. This system consisted of, *inter alia*, forcing employees to work for free during their "training" sessions; destroying the employees' time cards and falsifying records; charging employees for customers' mistakes; threatening employees with violence and sexual abuse; threatening employees with deportation or being taken "to the desert"; threatening the families of the employees; sexual abuse; and many others.

38. Every week such employees would receive either cash or a paycheck that did not specify the hours or days worked during each week, or even a classification of such employees.

39. Yet, despite the fact that the paycheck did not specify the amount of time worked by each employee, it was the Defendants' company-wide policy that most of the employees made a day-rate and that any absence of a given day would result in denial of pay.

40. Indeed, for any workweek that the Lead Plaintiffs worked fewer days than their required quota, even if such an absence was necessitated by the Defendants' operating requirements, the Defendants deducted pay from the Lead Plaintiffs' paychecks accordingly.

41. Defendants did not maintain timekeeping records documenting the actual hours worked by the Lead Plaintiffs and other similarly situated day-rate employees.

42. Very often the Defendants forced their employees to work 6-7 days a week for 10-14 hours a day without overtime pay at the rate of $50 per day.

43. In addition, each time a female employee would bring a question of pay or the conditions of his or her employment to the Defendants, she was instantly intimidated to withdraw her demands by being called a "bitch," "whore," and "stupid idiot worth a dick," among many others.

44. Instead of addressing the employees' demands, the Defendants implemented a system of physical and emotional coercion, sexual abuse, and threats.

45. It was specifically one of the requirements of the job to have sexual intercourse with Hector in order to be treated equally to others.

46. If a female employee refused Hector's sexual demands, she would be punished by threats, violence, intimidation, and being removed from the schedule.

47. In addition, the employees were constantly reminded about their economic dependence on the Defendants and threatened by the alleged might and influence of Hector, who supposedly knows "everybody," including members of Mexican cartels who stand ready to take unruly employees "to the desert."

48. Employees were also reminded that they were bound by "contracts" that purportedly require them to work for $50 per day without overtime and regardless of the hours worked, prohibit them from discussing the conditions of their employment with the outside world, prohibit them from having personal relationships outside of work, and allow the Defendants to sexually harass the employees at work.

49. On numerous occasions, the Defendants made it clear to their employees that any dissent would be punished.

50. As a result of this coercive system, throughout the years the Defendants were able to exploit their employees while earning millions of dollars from their labor.

51. Nevertheless, in October 2019, the situation at the Restaurant reached a boiling point, and some of the Defendants' employees decided to breach their silence and seek legal help.

52. Consequently, the Defendants learned that some of their employees were preparing a legal action against them.

53. In response, the Defendants immediately took steps to collectively intimidate and exemplarily punish their employees by a threat of a preemptive action to "deport" some of the employees and separate them from their families.

54. Moreover, some of the Lead Plaintiffs that the Defendant suspected of participating in this action were punished by the Defendants by cutting the employees' hours.

55. The majority, if not all, of the Defendants' female employees were also constantly harassed and exploited sexually by Hector, Julian, and Danny.

56. The failure of the Defendants to pay the Lead Plaintiffs and other day-rate employees the minimum wages and overtime wages legally due them is a violation of the FLSA and Nevada law.

57. The inaccurate timekeeping records kept by the Defendants, or the lack thereof, related to the Lead Plaintiffs and other day-rate employees is a violation of the FLSA and Nevada Law.

58. This Collective Action brought by the Lead Plaintiffs on behalf of themselves and all other similarly situated day-rate and hourly rate employees of the Defendants arises from an ongoing illegal and improper scheme perpetuated by the Defendants to systematically and willfully violate the provisions of the FLSA by knowingly and deliberately failing to pay a class

of current and former employees the minimum and overtime wages legally due them under the FLSA.

59. Defendants exercised control over the wages, hours, and working conditions of all non-exempt employees, including the Lead Plaintiffs.

60. For the time frame relevant to this lawsuit, all decisions regarding whether or not to pay all legally due wages to the Lead Plaintiffs and other day-rate employees was done with the knowledge, approval, and at the direction of the Defendants.

61. The Defendants knew or should have known that their policies regarding payment of wages as described herein violated the FLSA and Nevada statutes and are, therefore, responsible for such failures.

62. The actions of the Defendants in failing to comply with the provisions of the FLSA and Nevada law were deliberate and willful.

63. For the time frame relevant to this lawsuit, the illegal policies and practices described herein are part of a centralized policy, practice, and scheme developed and orchestrated by the Defendants for the purpose of their enrichment and benefit.

64. The actions of the Defendants in not paying all legally required overtime wages to the Lead Plaintiffs and to those employees of the Defendants who are similarly situated have resulted in economic damage to the Lead Plaintiffs and those similarly situated employees.

**V.**

**COLLECTIVE ACTION ALLEGATIONS**

65. Lead Plaintiffs bring their First Cause of Action for violation of the FLSA as a Collective Action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b), on behalf of all persons who were, are, or will be employed by the Defendants as similarly situated, non-managerial employees

who are entitled to unpaid minimum wage and overtime in Nevada and throughout any time within the applicable statute of limitations period, who have not been compensated at a rate of $7.25 per hour, and 1½ times their regular pay rate for all hours worked in excess of forty (40) hours per workweek. All of these employees received or currently receive their paychecks from Mariscos and La Catrina.

66. The First Cause of Action for violations of the FLSA may be brought and maintained as an "opt-in" Collective Action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b), as prospective members of the FLSA Collective Action are similarly situated to the Lead Plaintiffs and have claims that are similar to the Lead Plaintiffs' First Cause of Action.

67. Questions of law and fact common to the Collective Action as a whole include, but are not limited to, the following:

a) Whether the Defendants unlawfully failed and continue to fail to pay minimum wage and overtime compensation in violation of the FLSA, 29 U.S.C. §§ 201 *et seq.*;

b) Whether the Defendants' failure to pay minimum wage and overtime to the FLSA Collective Action Plaintiffs was willful within the meaning of the FLSA;

c) Whether the Defendants failed and continue to fail to maintain accurate records of actual time worked by the FLSA Collective Action Plaintiffs;

d) Whether the Defendants failed and continue to fail to record or report all actual time worked by the FLSA Collective Action Plaintiffs;

e) Whether the Defendants failed and continue to fail to provide accurate wage statements itemizing all actual time worked and wages earned by the FLSA Collective Action Plaintiffs; and

12

f) Whether the Defendants' policies and practices described herein are part of a centralized policy, practice, and scheme developed and orchestrated by the Defendants for the purpose of denying Lead Plaintiffs and the FLSA Collective Action Plaintiffs minimum wage and overtime pay.

68. Lead Plaintiffs and the FLSA Collective Action Plaintiffs are similarly situated and are subject to the Defendants' common practice, policy- or plan of refusing to compensate all hours worked and refusing to pay minimum wage and overtime in violation of the FLSA.

69. The names and addresses of the FLSA Collective Action Plaintiffs are available from the Defendants, and notice should be provided to the FLSA Collective Action Plaintiffs *via* first-class mail to their last known address as soon as possible.

70. As appropriate, the Lead Plaintiffs reserve the right to amend and supplement the definition of the previously outlined class of similarly situated individuals as information is disclosed and uncovered through future discovery.

## VI.

### **FIRST CAUSE OF ACTION**

### **(Violation of the FLSA, 29 U.S.C. §§ 201 *et seq.*)**

71. Lead Plaintiffs repeat and incorporate the allegations contained in Paragraphs 1-70 above as fully set forth herein.

72. The Defendants individually and collectively are employers as defined by the FLSA and are liable to the Lead Plaintiffs and FLSA Collective Action Plaintiffs for failure to pay minimum wage and overtime wages.

73. Lead Plaintiffs and FLSA Collective Action Plaintiffs do not rightly qualify for any of the exemptions to the payment of minimum wages or overtime wages outlined in the FLSA and

should rightly be paid overtime wages for all hours worked over 40 hours in any and all workweeks.

74. Lead Plaintiffs and FLSA Collective Action Plaintiffs routinely worked, and continue to work, in excess of 40 hours during their workweek without receiving overtime compensation in violation of the FLSA.

75. As a result of the illegal and improper policy of the Defendants regarding the payment of minimum and overtime wages as previously outlined, the Lead Plaintiffs and FLSA Collective Action Plaintiffs have suffered economic damages in an amount to be proved at trial.

76. The policy of the Defendants to not pay legally required minimum and overtime wages to the Lead Plaintiffs and FLSA Collective Action Plaintiffs was willful, thereby entitling the Lead Plaintiffs and FLSA Collective Action Plaintiffs who opt in to this case to recover damages and collect overtime wages for the three years preceding November 5, 2019, in case of the Lead Plaintiffs, or for three years preceding the time any FLSA Collective Action Plaintiffs opt in to this case.

77. As provided for under federal statute, the Defendants are also liable to the Lead Plaintiffs and FLSA Collective Action Plaintiffs for all other available damages, including liquidated damages, penalties, and reasonable attorney fees and costs.

## VII.

## **SECOND CAUSE OF ACTION**

### **(Retaliation in Violation of the FLSA)**

78. Lead Plaintiffs repeat and incorporate the allegations contained in Paragraphs 1-77 above as fully set forth herein.

79. In October 2019, the Lead Plaintiffs engaged in a concerted activity to prepare the present lawsuit and a parallel action for sexual discrimination.

80. The Defendants unlawfully threatened, discriminated against, and otherwise retaliated against Plaintiffs Rodriguez, Torres, Peralta, and Flores in whole or in part for engaging in protected activity under the FLSA.

81. The actions of the Defendants as described herein constitute an adverse employment action designed to deter the protected activity and violate the anti-retaliation provisions of the FLSA as outlined in 29 U.S.C. § 215.

82. As a result of the retaliatory actions of the Defendants, Plaintiffs Rodriguez, Torres, Peralta, and Flores have suffered and will continue to suffer economic damages in an amount to be proved at trial.

83. As a result of the retaliatory actions of Defendants, Plaintiffs Rodriguez, Torres, Peralta, and Flores are entitled to collect all remedies available to them under the FLSA, including liquidated damages, attorney fees and costs, and punitive damages.

**(Injunctive Relief Allegations)**

84. The Defendants' actions against Plaintiffs Rodriguez, Torres, Peralta and Flores pose a real threat to the participation of the Lead Plaintiffs and FLSA Collective Action Plaintiffs in this Action.

85. There is a real risk that the Defendants' retaliation will deter individuals from either joining this Collective Action or cooperating in its prosecution.

86. Lead Plaintiffs and FLSA Collective Action Plaintiffs have no adequate remedy at law to redress the wrongs herein alleged. Unless enjoined by this Court, the Defendants will continue to violate their employees' rights to assert wage claims under the FLSA and Nevada law.

87. Unless enjoined by this Court, the Defendants' actions against Plaintiffs Rodriguez, Torres, Peralta, and Flore will cause many FLSA Collective Action Plaintiffs to forgo their wage claims in fear of retaliation.

88. Unless enjoined by this Court, the Defendants' actions against Plaintiffs Rodriguez, Torres, Peralta, and Flore will also continue to deter the enforcement of the FLSA and Nevada law. Any such deterrent effect, even if only temporary, will effectively eliminate claims of many FLSA Collective Action Plaintiffs due to the continuous running of the statute of limitations for their claims.

89. Lead Plaintiffs, therefore, seek preliminary and permanent injunctive relief against Defendants enjoining them from engaging in any retaliatory actions Plaintiffs Rodriguez, Torres, Peralta, Flore, and any other similarly situated employees of the Defendants pending the resolution of this Collective Action.

90. In addition, the Lead Plaintiffs seek preliminary and permanent injunctive relief against the Defendants, enjoining them from otherwise discriminating and retaliating against Lead Plaintiffs and other similarly situated employees of the Defendants.

**VIII.**

**THIRD CAUSE OF ACTION**

**(Failure to Pay All Wages Due and Owing Upon Termination Pursuant to NRS 608.020-608.050)**

91. Lead Plaintiffs repeat and incorporate the allegations contained in Paragraphs 1-90 above as fully set forth herein.

92. Plaintiffs Gutierrez and Medrano bring this Third Cause of Action pursuant to NRS 608.040.

16

93. Plaintiffs Gutierrez and Medrano were discharged or resigned from their employment with the Defendants, and at the time of such discharge or resignation, were owed unpaid wages by the Defendants.

94.       The Defendants have failed and refused to pay Plaintiffs Gutierrez and Medrano their full earned but unpaid wages, thereby constituting a violation of NRS 608.020 or 608.030, and giving rise to a claim under NRS 608.040.

95. As a result of the foregoing, Plaintiffs Gutierrez and Medrano are entitled to a judgment against the Defendants for the penalty prescribed by NRS 608.040, to wit, for a sum equal to up to 30 days' wages, along with interest, costs, and attorney fees.

## IX.

## **FOURTH CAUSE OF ACTION**

### **(Failure to Pay Minimum Wages in Violation of Nevada Constitution)**

96. Lead Plaintiffs repeat and incorporate the allegations contained in Paragraphs 1-95 above as fully set forth herein.

97. Article 15, Section 16 of the Nevada Constitution sets forth the minimum requirements in the State of Nevada and further provides that "[t]he provisions of the section may not be waived by agreement between an individual employee and employer . . . ." An employee claiming violation of the section may bring an action against his or her employer in the courts of the State to enforce the provisions of the section and shall be entitled to all remedies available under the law or in equity appropriate to remedy any violation of the section, including, but not limited to, back pay, damages, reinstatement, or injunctive relief. An employee who prevails in any action to enforce the section shall be awarded his or her reasonable attorney fees and costs.

98. As alleged above, Defendants failed to pay Lead Plaintiffs any wages for many hours they worked, including minimum wages.

99. As a result of the foregoing, Lead Plaintiffs are entitled to a judgment against the Defendants for all hours that do not meet the minimum wage standard under the Nevada Constitution.

## X.

## FIFTH CAUSE OF ACTION

### (Failure to Pay Wages for All Hours Worked in Violation of NRS 608.140 and 608.016)

100.     Lead Plaintiffs repeat and incorporate the allegations contained in Paragraphs 1-99 above as fully set forth herein.

101.     NRS 608.140 provides that an employee has a private right of action for unpaid wages.

102.     NRS 608.016, entitled "Payment for each hour of work; trial or break-in period not excepted," states that: "An employer shall pay the employee wages for each hour the employee works. An employer shall not require an employee to work without wages during a trial or break-in period."

103.     Nevada Administrative Code ("NAC") 608.115(1), entitled "Payment for time worked" (NRS 607.160, 608.016, 608.250): states: "An employer shall pay an employee for all time worked by the employee at the direction of the employer, including time worked by the employee that is outside the scheduled hours of work of the employee."

104.     As alleged above, Defendants did not pay employees for all time worked.

105.     As a result of the foregoing, Lead Plaintiffs are entitled to a judgment against the Defendants for all hours at their regular rate of pay, or at the minimum wage, and any applicable overtime premium rate, for the time worked each shift, but not paid for three years immediately preceding the filing of this complaint until the date of judgment after trial, together with attorney fees, costs, and interest as provided by law.

**XI.**

**SIXTH CAUSE OF ACTION**

**(Failure to Pay Overtime Wages in Violation of NRS 608.140 and 608.018)**

106.     Lead Plaintiffs repeat and incorporate the allegations contained in Paragraphs 1-105 above as fully set forth herein.

107.     NRS 608.140 provides that an employee has a private right of action for unpaid wages.

108.     NRS 608.018 provides:

>     1.   An employer shall pay 1 1/2 times an employee's regular wage rate whenever an employee who receives compensation for employment at a rate less than 1 1/2 times the minimum rate prescribed pursuant to NRS 608.250 works:
>         (a)  More than 40 hours in any scheduled week of work; or
>         (b)  More than 8 hours in any workday unless by mutual agreement the employee works a scheduled 10 hours per day for 4 calendar days within any scheduled week of work.
>     2.   An employer shall pay 1 1/2 times an employee's regular wage rate whenever an employee who receives compensation for employment at a rate not less than 1 1/2 times the minimum rate prescribed pursuant to NRS 608.250 works more than 40 hours in any scheduled week of work.

109.     Lead Plaintiffs routinely worked, and continue to work, in excess of 40 hours during their workweek without receiving overtime compensation in violation of Nevada law.

19

110.     As a result of the illegal and improper policy of the Defendants regarding the payment of overtime wages as previously outlined, the Lead Plaintiffs have suffered economic damages in an amount to be proved at trial.

111.     As a result of the foregoing, Lead Plaintiffs are entitled to a judgment against the Defendants for a payment at 1½ times the "regular rate" of pay for all hours worked in excess of eight (8) hours in a workday for those Lead Plaintiffs whose regular rate of pay did not exceed the 1½ minimum wage set by law, and premium overtime rate of 1½ their regular rage for the remaining Lead Plaintiffs who worked in excess of forty (40) hours a workweek, together with attorney fees, costs, and interest as provided by law.

**XII.**

**<u>SEVENTH CAUSE OF ACTION</u>**

**(Civil Conspiracy)**

112.     Lead Plaintiffs repeat and incorporate the allegations contained in Paragraphs 1-111 above as fully set forth herein.

113.     As alleged above, the Defendants, by acting in concert, have conspired in order to discriminate and otherwise retaliate against the Lead Plaintiffs and other similarly situated employees of the Defendants in violation of the FLSA and Nevada law.

114.     The Defendants entered into an unlawful agreement with each other to violate the Lead Plaintiffs' rights under the FLSA and Nevada law to prevent the Lead Plaintiffs from obtaining compensation for their work and to prevent them from asserting their rights.

115.     The Defendants and their actions, collectively and/or in concert, have caused Lead Plaintiffs damages and deterred other similarly situated employees of the Defendants from asserting their rights under the FLSA and Nevada law.

116.     Lead Plaintiffs have suffered damages as a direct and proximate result of the action of the Defendants.

117.     In taking the aforementioned actions, the Defendants acted intentionally, maliciously, and oppressively, and Lead Plaintiffs, therefore, are entitled to recover punitive damages from the Defendants.

118.     As a result of the actions of the Defendants, Lead Plaintiffs are entitled to collect attorney fees from the Defendants.

**XIII.**

**JURY DEMAND**

119.     Lead Plaintiffs on behalf of themselves and on behalf of the FLSA Collective Action Plaintiffs demand a trial by jury upon all issues herein.

**WHEREFORE**, Lead Plaintiffs pray for a judgment against the Defendants as follows:

A.  Declare and certify that this action can proceed as a Collective Action on behalf of the Lead Plaintiffs and the class of similarly situated current and former employees of the Defendants who have not received all wages legally due to them as described above;

B.  That this Court should give or authorize notice to all similarly situated employees informing them of the opportunity to join or "opt in" to this Collective Action through the filing of consent-to-join forms with the Court;

C.  Declare that the Lead Plaintiffs and those similarly situated employees who opt in to this Collective Action are legally entitled to collect all wages, including overtime wages owed them, and that the policy of Defendants to not pay wages is illegal and in violation of the FLSA;

21

D.  Enter a judgment against the Defendants in an amount to be proved at trial as compensation to the Lead Plaintiffs and all those similarly situated employees who opt in to this Collective Action for the wages that the Defendants illegally and improperly withheld in violation of the FLSA;

E.  Declare that the actions of the Defendants in failing to pay overtime wages were willful and that a three-year statute of limitations preceding November 5, 2019, should apply for the Lead Plaintiffs' claims under the FLSA and for those similarly situated employees of the Defendants who opt in to this Collective Action for collecting the wages, including overtime wages properly due them;

F.  Declare that the Lead Plaintiffs and all those similarly situated employees of the Defendants who opt in to this Collective Action are entitled to collect liquidated damages and prejudgment interest on such liquidated sums at the highest legal rate allowable;

G.  Award the Lead Plaintiffs and all those similarly situated employees who opt in to this Collective Action their reasonable attorney fees, expenses, and costs, and all other remedies and recoveries available to them under the FLSA;

H.  Declare that the actions of the Defendants in discriminating against Plaintiffs Rodriguez, Torres, Peralta, and Flores as described above violate the anti-retaliation provisions of the FLSA;

I.  Enjoin the Defendants from otherwise discriminating and retaliating against the Lead Plaintiffs and other similarly situated employees of the Defendants.

J.  Order that the Defendants pay Lead Plaintiffs compensatory damages and punitive damages sufficient to punish Defendants and deter retaliatory conduct in the future;

K.  Award the Lead Plaintiffs interest on all sums awarded in judgment at the highest legal rate allowable from the date of judgment until paid;

L.  Award Plaintiffs Gutierrez and Medrano penalties for their unpaid wages under NRS 608.040;

M.  Retain jurisdiction over this action to ensure full compliance with the Court's orders and require the Defendants to file such reports as the Court deems necessary to evaluate such compliance;

N.  For such other further relief as the Court deems just and proper under the circumstances.

DATED this 5th day of November, 2019.

The Medrala Law Firm, Prof. LLC
/s/ Jakub P. Medrala

_____

JAKUB P. MEDRALA, ESQ.
Nevada Bar No. 12822
1091 S. Cimarron Rd., Suite A-1
Las Vegas, NV 89145
702-475-8884
jmedrala@medralaw.com
*Attorney for Plaintiffs*

**<u>CONSENT TO BECOME PARTY PLAINTIFF</u>**
**<u>UNDER</u>**
**<u>FEDERAL FAIR LABOR STANDARDS ACT</u>**

I am an employee currently or formerly employed by Mariscos El Puerto, Inc., La Catrina, LLC, La Catrina Entertainment, LLC, Manuela Hernandez, Julian Hernandez, Hector Moreno, and/or Danny Henandez.

I consent to be a plaintiff in this action to collect unpaid overtime wages. I agree that I am bound by the terms of the ATTORNEY-CLIENT CONTINGENCY FEE AGREEMENT signed by the Named Plaintiffs in this case.

Viridiana Ramirez
Full Legal Name (Print)

Signature

10/21/19
Date

## CONSENT TO BECOME PARTY PLAINTIFF
## UNDER
## FEDERAL FAIR LABOR STANDARDS ACT

I am an employee currently or formerly employed by Mariscos El Puerto, Inc., La Catrina, LLC, La Catrina Entertainment, LLC, Manuela Hernandez, Julian Hernandez, Hector Moreno, and/or Danny Henandez.

I consent to be a plaintiff in this action to collect unpaid overtime wages. I agree that I am bound by the terms of the ATTORNEY-CLIENT CONTINGENCY FEE AGREEMENT signed by the Named Plaintiffs in this case.

_____
Full Legal Name (Print)

_____
Signature

_____
Date

# CONSENT TO BECOME PARTY PLAINTIFF
# UNDER
# FEDERAL FAIR LABOR STANDARDS ACT

I am an employee currently or formerly employed by Mariscos El Puerto, Inc., La Catrina, LLC, La Catrina Entertainment, LLC, Manuela Hernandez, Julian Hernandez, Hector Moreno, and/or Danny Henandez.

I consent to be a plaintiff in this action to collect unpaid overtime wages. I agree that I am bound by the terms of the ATTORNEY-CLIENT CONTINGENCY FEE AGREEMENT signed by the Named Plaintiffs in this case.

Brenda Karla Gabriela Reyes Medrano

Full Legal Name (Print)

BRENDA REYES.

Signature

10/18/2019.

Date

## **CONSENT TO BECOME PARTY PLAINTIFF**
## **UNDER**
## **FEDERAL FAIR LABOR STANDARDS ACT**

I am an employee currently or formerly employed by Mariscos El Puerto, Inc., La Catrina, LLC, La Catrina Entertainment, LLC, Manuela Hernandez, Julian Hernandez, Hector Moreno, and/or Danny Henandez.

I consent to be a plaintiff in this action to collect unpaid overtime wages. I agree that I am bound by the terms of the ATTORNEY-CLIENT CONTINGENCY FEE AGREEMENT signed by the Named Plaintiffs in this case.


_Ayde Azucena perez_
Full Legal Name (Print)

_Ayde_
Signature

_10-18-2019_
Date

## **CONSENT TO BECOME PARTY PLAINTIFF**
## **UNDER**
## **FEDERAL FAIR LABOR STANDARDS ACT**

I am an employee currently or formerly employed by Mariscos El Puerto, Inc., La Catrina, LLC, La Catrina Entertainment, LLC, Manuela Hernandez, Julian Hernandez, Hector Moreno, and/or Danny Henandez.

I consent to be a plaintiff in this action to collect unpaid overtime wages. I agree that I am bound by the terms of the ATTORNEY-CLIENT CONTINGENCY FEE AGREEMENT signed by the Named Plaintiffs in this case.

Salvador Vladimir Jimenez Flores
**Full Legal Name (Print)**

**Signature**

October 17 2019
**Date**

**CONSENT TO BECOME PARTY PLAINTIFF
UNDER
FEDERAL FAIR LABOR STANDARDS ACT**

I am an employee currently or formerly employed by Mariscos El Puerto, Inc., La Catrina, LLC, La Catrina Entertainment, LLC, Manuela Hernandez, Julian Hernandez, Hector Moreno, and/or Danny Henandez.

I consent to be a plaintiff in this action to collect unpaid overtime wages. I agree that I am bound by the terms of the ATTORNEY-CLIENT CONTINGENCY FEE AGREEMENT signed by the Named Plaintiffs in this case.

_Erika Socorro Valle Peralta_

**Full Legal Name (Print)**

_Erikavalle_

**Signature**

_10|17|19_

**Date**